David A. Lowe (State Bar #178811)
John T. Mullan (State Bar # 221149)
RUDY, EXELROD, ZIEFF & LOWE, L.L.P.
351 California Street, Suite 700
San Francisco, CA  94104
Telephone:  (415) 434-9800
Facsimile:   (415) 434-0513
Email:  dal@rezlaw.com
Email:  jtm@rezlaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICHARD PRENTICE, CHRISTIAN MILLER, and TIFFINEY PETHERBRIDGE, on their own behalf and on behalf of classes of those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FUND FOR PUBLIC INTEREST RESEARCH, INC.,<br><br>Defendant.<br>_____ / | Case No.  C-06-7776 SC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  May 15, 2009<br>Time:  10:00 a.m.<br>Court:  Courtroom 1<br>**Judge: Hon. Samuel Conti** |

# NOTICE OF MOTION AND MOTION

NOTICE IS HEREBY GIVEN that Plaintiffs Rich Prentice, Christian Miller, and Tiffiney Petherbridge hereby do move the Court will move the Court for an award of attorneys' fees of $537,500 and reimbursement of litigation costs and expenses in an amount of up to $115,000.

This motion is based upon this Notice of Motion and Motion; the executed Stipulation of Settlement and Release ("Settlement") preliminarily approved by the Court on February 4, 2009;[1] the Order Granting Motion for Preliminary Approval of Class Action Settlement and Class Certification; and the declarations of David A. Lowe and Jennifer M. Keough, filed herewith in support of this Motion, and all other papers on file in this action.

DATED: April 10, 2009

Respectfully submitted,

RUDY, EXELROD, ZIEFF & LOWE, LLP

By: _____*/s/ David A. Lowe*_____
DAVID A. LOWE
Attorneys for Plaintiffs

---

[1] The executed Settlement is attached as Exhibit 1 to the [Proposed] Order Granting Final Approval.

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Having secured a $2.15 million settlement on behalf of the Plaintiff Class, Class Counsel now seek an attorneys' fee award of $537,500, which represents 25 percent of the Settlement Fund, this Circuit's benchmark for awards from the common fund. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002), *cert. denied*, 537 U.S. 1018 (2002); *Chemical Bank v. City of Seattle (In re Washington Public Power Supply Sec. Litig.)*, 19 F.3d 1291, 1297 (9th Cir. 1994); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). The requested award is fair, reasonable, and appropriate under the common fund doctrine. *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

Plaintiffs' counsel also seek reimbursement of litigation costs and expenses in the amount of $112,284.88, and approval of additional costs and expenses incurred until the date the settlement has been finally administered, not to exceed a total of $115,000.[2] The costs were all incurred in connection with the prosecution and settlement of the action and the implementation of the settlement and are reasonable and proper.

***None*** of the approximately 12,500 Class Members have objected to Class Counsel's requests for attorneys' fees or reimbursement of costs and expenses, and only three have opted out. Declaration of Jennifer Keough ("Keough Decl."), ¶ 10; Declaration of David A. Lowe ("Lowe Decl."), ¶ 25.

**I.     HISTORY AND STATUS OF THE CASE**

The law firm of Rudy, Exelrod, Zieff & Lowe, LLP is Class Counsel in this case. Its efforts on behalf of current and former Canvassers and Field Managers, employed by Defendant, The Fund for Public Interest Research, Inc. ("Fund"), resulted in a $2.15 million settlement for the benefit of the Class and a change in the employer's policies such that Class Members and

---

[2] The costs to date are based on Rudy, Exelrod, Zieff & Lowe's records through March 31, 2009. Declaration of David A. Lowe, ¶ 38 & Exh. 2.

other employees now receive overtime compensation for overtime hours worked.

On December 19, 2006, Richard Prentice, Christian Miller and Tiffiney Petherbridge ("Plaintiffs") on behalf of themselves and current and former Canvassers and Field Managers filed an alleged FLSA collective action and state law class actions lawsuit against Fund styled *Richard Prentice, et al. v. The Fund for Public Interest Research, Inc.*, No. C 06-7776 SC, in the United States District Court for the Northern District of California ("the Action"). Plaintiffs assert claims for 1) FLSA Overtime and Minimum Wage Violations; and, as to present and former California Canvassers and Field Managers, (2) Violations of California Overtime and Minimum Wage Provisions; (3) California Waiting Period Penalties; (4) Violations of California Record-Keeping Provisions; (5) Violations of California Meal and Rest Period Provisions; (6) Violations of the California Unfair Competition Law; (7) Conversion; and, as to present and former New York Canvassers and Field Managers, (8) Violations of New York Overtime Provisions, and (9) Violations of New York "Spread of Hour" Provisions.

As detailed in Plaintiffs' Motion for Preliminary Approval, Class Counsel has conducted a thorough investigation into the facts of this action, including a review of relevant documents, and has diligently pursued an investigation of Plaintiffs' and the Classes' claims against Fund. Lowe Decl., ¶ 18. During discovery, Fund has provided, and Class Counsel has reviewed, thousands of documents related to the claims asserted on behalf of the FLSA collective action class and putative state classes; Fund has produced, and Class Counsel have deposed a corporate representative of Fund who had knowledge regarding the facts relating to the litigation; Class Counsel has defended the depositions of the named Plaintiffs and a number of FLSA collective action opt-ins; Fund has also produced, and Class Counsel has reviewed, data on FLSA collective action class and putative state class members, including salary, position worked, and dates of hire and termination. Class Counsel also interviewed numerous putative collective and class action members. *Id*. Class Counsel successfully pursued a Motion for Leave to Send *Hoffmann-La Roche* Notice. *Id*. at ¶ 19. Class Counsel also litigated Fund's Motion to Compel Certain Information and Documents. *Id*.

///

All told, Class Counsel spent more than 1,000 hours vigorously investigating and litigating the claims asserted against Fund. Specifically, as of the end of March, 2009, Class Counsel had spent approximately 1,062 hours in this litigation, including paralegal and law clerk time, for a total lodestar of $413,328. Lowe Decl., ¶ 36 & Exh. 1.

After a mediation, conducted on June 24, 2008 by an experienced mediator, Honorable Edward R. Infante (United States Magistrate Judge, Retired), together with continuing discussions and negotiations thereafter, this Settlement was reached after arms-length negotiations by and among the parties. *Id*. at ¶ 20. The negotiations were protracted, and the mediation itself required numerous follow up phone calls on the part of Judge Infante. *Id.* For example, when the parties were unable to agree on a *cy pres* beneficiary, the issue was briefed and submitted to Judge Infante, who selected the Employment Law Center. *Id.*

Following Plaintiffs' Motion for Preliminary Approval filed on December 10, 2008, this Court issued an order preliminarily approving the proposed settlement, certifying California and New York classes, finding that individuals who filed consents to join the previously certified FLSA Collective Action and who worked for Fund only after May 7, 2007 are not similarly situated to the balance of the Collective Action members and are therefore not part of this Action, approving the form of notice, and setting a schedule for the final approval process.

Pursuant to the Court's February 4, 2009 Order, the Notice was mailed to Class Members on or about February 13, 2009. Declaration of Jennifer Keough ("Keough Decl.") ¶ 5. Of the more than 12,000 putative class members who received the Notice, only three opted out. (The deadline for doing so was March 30, 2009). Keough Decl., ¶ 9 & Exh. B; Lowe Decl., ¶ 25. Not one Class Member has objected to the requested award of attorneys' fees or reimbursement of costs, or indeed to any part of the Settlement.[3] Keough Decl., ¶ 10; Lowe Decl. at ¶ 25.

## II. ARGUMENT.

"The common fund doctrine provides that a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to

---

[3] The deadline to object to the Settlement was March 30, 2009.

recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994); *In re Omnivision Technologies, Inc.*, 559 F.Supp.2d 1036, 1046 (N.D. Cal., 2008). The traditional method for calculating a fee award in common fund cases is to award counsel a percentage of the total fund. *See Blum*, 465 U.S. at 900 n.16.

In the Ninth Circuit, 25 percent of the common fund is the "benchmark" for an attorneys' fees award. *See Paul, Johnson, Alston & Hunt*, 886 F.2d at 272; *see also In re Omnivision Technologies, Inc.*, 559 F.Supp.2d at 1046 (approving fees in the amount of 28 percent of the common fund, and noting that "in most common fund cases, the award exceeds that [25 percent] benchmark.") Here, the requested award of $537,500 meets the Ninth Circuit's benchmark for a common fund attorneys' fee award. Additionally, reimbursement of litigation costs in the amount of $112,289.05 incurred to date in pursuing this matter, and the reimbursement of future costs incurred until the date the settlement is finally administered, not to exceed a total of $115,000, is more than reasonable.

**A. Counsel Are Entitled To a Common Fund Attorneys' Fee Award**

**1. The Equitable Common Fund Doctrine Applies When, as Here, the Litigation has Recovered a Certain and Calculable Fund on Behalf of a Group of Beneficiaries.**

For well over a century, federal and state courts have recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have an equitable right to be compensated from that fund as a whole for their successful efforts in creating it. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (the United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund … is entitled to a reasonable attorney's fee from the fund as a whole"); *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) (recognizing common fund doctrines); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) (same); *see also Serrano v. Priest*, 20 Cal.3d 25, 35 (Cal. 1977); *York Ins. Group of Maine v. Van Hall,* 704 A.2d 366, 368 (Me. 1977); *Seinfeld v. Robinson*, 246 A.D. 2d 291, 294 (N.Y. App. Div. 1998).

///

The common fund doctrine rests on the understanding that attorneys should normally be paid by their clients, and that unless attorneys' fees are paid out of the common fund where the attorneys' unnamed class member "clients" have no express retainer agreement, those who benefited from the fund without contributing to those who created it would be unjustly enriched. *Boeing*, 444 U.S. at 478.

This litigation has resulted in a Settlement Fund of $2.15 million to be distributed to: 1) the FLSA Collective Action Class members; 2) all individuals who worked for Fund as a Canvasser or Field Manager in California during the California Class Period (i.e., December 19, 2002 through May 7, 2007), and who did not opt-out; and 3) all individuals who worked for Fund as a Canvasser or Field Manager in New York during the New York Class Period (i.e., December 19, 2000 through May 7, 2007), and who did not opt-out.  Because none of these individuals have paid Plaintiffs' counsel fees for their efforts during the litigation, equity requires them to pay a fair and reasonable fee, based on what the market would traditionally require, no less than if they had hired private counsel to litigate their cases individually.  *See Boeing*, 444 U.S. at 479-481; *see also In re Omnivision*, 559 F.Supp.2d at 1046; *Gerlach v. Wells Fargo & Co.*, 2007 WL 163189, *1 (N.D. Cal, Jan. 19, 2007); *Bank of America v. Cory*, 164 Cal.App.3d 66, 90-91 (Cal. Ct. App. 1985).

**B.     The Fee Award Should Be Calculated As a Percentage of the Common Fund.**

The courts have endorsed the method of awarding a percentage of the total fund as a fair way to calculate a reasonable fee when contingency fee litigation has produced a common fund. *See, e.g., Blum*, 465 U.S. at 900 n.16; *Six* Mexican *Workers*, 904 F.2d at 1311 (common fund fee is generally "calculated as a percentage of the recovery"); *Paul, Johnson, Alston & Hunt,* 886 F.2d at 272; *In re Omnivision*, 559 F.Supp.2d at 1046; *Gerlach*, 2007 WL 163189 at *1; *Morganstein v. Esber*, 768 F.Supp. 725, 728 (C.D. Cal. 1991); *Glendale City Employees' Ass'n, Inc. v. City of Glendale*, 15 Cal.3d 328, 341 n.19 (Cal. 1975).

The percentage method is appropriate for a number of well-recognized reasons.  One of the most important reasons is that the percentage method accomplishes fee spreading in a manner that comports with the legal marketplace, where counsel's success is frequently measured in

terms of the results counsel has achieved. *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) (in common fund cases "the monetary amount of the victory is often the true measure of [counsel's] success"). By assessing the amount of the fee in terms of the amount of the benefit conferred on the class, the percentage method "more accurately reflects the economics of litigation practice" which, "given the uncertainties and hazards of litigation, must necessarily be result-oriented." *Id*. (internal quotes and citation omitted).

Further, when clients do not pay an ongoing hourly fee to their counsel, they typically negotiate an agreement in which counsel's fee is based upon a percentage of any recovery. The percentage of the fund approach mirrors this aspect of the market and, accordingly, reflects the fee that would have been negotiated by the class members in advance, had such negotiations been feasible, given the prospective uncertainties and anticipated risks and burdens of the litigation. *See, e.g., Paul, Johnson, Alston & Hunt*, 886 F.2d at 271 ("it is well settled that the lawyer who creates a common fund is allowed an extra reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit"); *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (in a common fund case, the object "is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had one been feasible").

This market-based percentage approach to common fund fee awards has other benefits and advantages as well. Because the percentage approach mimics the market, it helps provide highly qualified attorneys the necessary incentive to bring large, complex class actions, even though by definition it is impossible in such cases to negotiate a fee with the unnamed class members in advance. Basing the common fund fee award on a percentage of the fund also encourages counsel to spend their time efficiently and to focus on maximizing the size of the class recovery, rather than their own lodestar hours. *Swedish Hospital*, 1 F.3d at 1269. Finally, the percentage method is far easier for courts to calculate than any alternative method. *Id*.; *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989.

In light of these benefits, courts have resoundingly approved the percentage of the fund method for calculating a reasonable fee award in common fund cases. In this case, the award of

6

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FEES AND COSTS
CASE NO.  C-06-7776 SC

1  Class Counsel's common fund fees should be assessed as a percentage of the total fund that will
2  be distributed to the class.

### C. The Requested Fee Award Meets the Ninth Circuit's 25 Percent Benchmark.

In determining what constitutes a fair and reasonable percentage of a settlement fund for purposes of calculating common fund fees, the Ninth Circuit has stated that courts look to a "benchmark" percentage of 25 percent of the total fund. *Paul, Johnson, Alston & Hunt*, 886 F.2d at 272; *Vizcaino*, 290 F.3d at 1047; *Six Mexican Workers*, 904 F.2d at 1311; *Gerlach*, 2007 WL 163189 at *1; *Morganstein*, 768 F. Supp. at 728 ("*Paul, Johnson* establishes 25 percent as the benchmark for common fund cases").[4]

### D. The Requested Fee Award is Fair and Reasonable.

The requested 25 percent common fund award is justified by the financial risks undertaken by Class Counsel in this litigation. Counsel accepted and litigated this class action solely on a contingency fee basis. Counsel has received no compensation for the outlay of attorney time, nor for any of the considerable expenses incurred. Moreover, there has never been any guarantee that counsel would be reimbursed for the costs, or paid for their time. No matter how many hours put in, no matter how burdensome the litigation, there would be no payment unless Plaintiffs prevailed.

The fairness of the requested fee award is further supported by the high quality of Class Counsel's legal representation. The efforts expended by Class Counsel in this case are described

---

[4] In approving an award of 28 percent of the $96,885,000 settlement fund, the *Vizcaino* court surveyed attorneys' fees awards in so-called "megafund" cases – that is, common fund settlements of $50-200 million – found in the Westlaw ALLCASES database and Class Action Reports' attorneys' fees section from Jan. 1, 1996 through Dec. 31, 2001. *Vizcaino*, 290 F.3d at 1046 n.1 & Appendix. Even where the common funds fell into this megafund range, the *Vizcaino* court noted that a majority of fee awards were "clustered in the 20-30 percent range." *Id*. at 1050 n.4, & Appendix. In common fund settlements of less than $50 million, such as this one, courts have awarded a higher percentage of the common fund as attorneys' fees. *See, e.g., In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming an award equal to 33 percent of the common fund); *In re Activision Sec. Litig.*, 723 F. Supp. at 1375 (32.8 percent of the common fund); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 498 (D.D.C. 1981) (45 percent of the $7.3 million settlement fund); *Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.*, 480 F. Supp. 1195, 1199 (S.D.N.Y. 1979), aff'd 622F.2d 1106 (2nd Cir. 1980) (approximately 53 percent of settlement fund); *Van Gemert v. Boeing Co.*, 516 F. Supp. 412, 420 (S.D.N.Y. 1981); *see also* Lowe Decl. at ¶¶ 5-14.

above and are extensively described in the Declaration of David A. Lowe. As Mr. Lowe's declaration reflects, Class Counsel's diligent, efficient, and creative pursuit of this matter positioned Plaintiffs to successfully settle this case for $2.15 million, and so afford redress to the entire Class, and avoid the inevitable expense and risk attendant to protracted litigation. Lowe Decl., ¶¶ 17-23. Indeed, Class Counsel have already spent approximately 1,062 hours in this litigation, including paralegal and law clerk time, for a collective lodestar of $413,328.[5] *Id.* at ¶ 36 & Exh. 1.

Finally, the requested amount of attorneys' fees was stated explicitly in the Notice of Proposed Class Action Settlement and Settlement Hearing. Class Members had until March 30, 2009 to object to Class Counsels' request for fees and costs. No objections to either the percentage of the common fund sought as attorneys' fees or to the award of costs sought by Class Counsel have been received. Keough Decl. at ¶ 10; Lowe Decl. at ¶ 25. Indeed, no class member has objected to any aspect of the settlement agreement, and only three have opted out of the class action settlement. Keough Decl. at ¶¶ 9 & 10; Lowe Decl. at ¶ 25. The absence of any objections to the fees and costs requested supports the conclusion that the requested award is fair, adequate, and reasonable. *In re Omnivision*, 559 F.Supp.2d at 1048 ("[n]one of the objectors raised any concern about the amount of the fee. This factor, like those above, also supports the requested award of 28% of the Settlement Fund."); s*ee generally Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) (affirming district court's order approving settlement agreement and allocation plan over objections by several groups of bondholders); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) (affirming district court's order approving consent decree over objections by a class representative).

///

---

[5] For purposes of a lodestar cross-check, the requested fees represent the lodestar to date plus a modest multiplier of approximately 1.3. This is consistent with the Ninth Circuit's lodestar plus multiplier fees methodology. *See, e.g., Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (noting that multipliers in the 3-4 range are common in class action lodestar awards); *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 697-99 (9th Cir. 1996) (affirming 2.0 multiplier under 42 U.S.C. § 1988). Class Counsel can provide the Court with detailed billing records should the Court desire to review such records.

### E. Class Counsel is Entitled to Recover Costs.

Class Counsel is also requesting to be reimbursed from the common fund for out-of-pocket expenses they incurred during this litigation. Reimbursement for these expenses from the common fund is appropriate for the same reasons attorneys' fees should be paid out of the fund: all beneficiaries should bear their fair share of the costs of the litigation, and these are the normal costs of litigation that counsel traditionally bill their paying clients. *See e.g.,, In re United Energy Corp. Solar Power Modules Tax Shelter Investment Sec. Litig.*, 1989 WL 73211, *6 (C.D. Cal. Mar. 9,1989); *see also Vincent*, 557 F.2d at 769 ("the doctrine is designed to spread litigation costs proportionately among all the beneficiaries so that the active beneficiary does not bear the entire burden alone and the "stranger" beneficiaries do not receive their benefits at no cost to themselves"); *In re Omnivision*, 559 F.Supp.2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.") Furthermore, attorneys may be reimbursed for reasonable out-of-pocket expenses that were "incidental and necessary to the representation of those clients." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

As of March 31, 2009, Class Counsel had incurred approximately $112,289 in litigation costs and expenses, and will continue to incur additional costs through the conclusion of this matter. Lowe Decl. at ¶¶ 38-39 & Exh. 2. These costs include costs associated with providing notice to the putative FLSA collective action members of the pending FLSA collective action, costs incurred in retaining an expert to calculate damages, mediation costs, photocopying, telephone, and mailing expenses, and other reasonable litigation-related costs. *Id.* All costs incurred here were necessary to the informed prosecution of this litigation and would normally have been billed to a client paying for counsel's services on a regular basis. These costs are quite reasonable for a case of this duration and complexity and should be reimbursed in full.

## II. CONCLUSION.

Given the favorable response by the Class to the settlement of this action, and the lack of any objections by Class Members after having been informed that Class Counsel was seeking attorneys fees of $537,500 and reimbursement for costs, Class Counsel respectfully request that

the Court issue an order finally determining and approving the payment of $537,500 as reasonable attorneys' fees and the payment of up to $115,000 as reasonable costs.

DATED: April 10, 2009          Respectfully submitted,

RUDY, EXELROD, ZIEFF & LOWE, LLP


By: _____*/s/ David A. Lowe*_____
     DAVID A. LOWE
     Attorneys for Plaintiffs

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

10
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FEES AND COSTS
CASE NO. C-06-7776 SC