**EXHIBIT 1**

1  Walter V. Siebert
   SHERMAN & HOWARD, LLC
2  633 Seventeenth Street
3  Suite 3000
   Denver, CO 80202
4  Telephone: 303.299.8222
   Facsimile: 303.298.0940
5

6  Attorneys for Defendant
   THE FUND FOR PUBLIC INTEREST RESEARCH, INC.
7

8  David A. Lowe (SBN 178811)
   John I. Mullan (SBN 221149)
9  RUDY, EXELROD & ZIEFF, LLP
   351 California Street, Suite 700
10 San Francisco, CA 94104
   Telephone: (415) 434-9800
11 Facsimile: (415) 434 0513
   dal@reztlaw.com
12 jtm@reztlaw.com

13
   Attorneys for Plaintiffs
14 RICH PRENTICE, CHRISTIAN MILLER &
   TIFFINEY PETHERBRIDGE
15

16               UNITED STATES DISTRICT COURT

17               NORTHERN DISTRICT OF CALIFORNIA

18               SAN FRANCISCO/OAKLAND DIVISION

19

20 RICHARD PRENTICE, CHRISTIAN MILLER,     Case No. C-06-7776 SC
   and TIFFINEY PETHERBRIDGE, on their own
21 behalf and on behalf of Class of those similarly   **STIPULATION OF SETTLEMENT AND**
   situated,                               **RELEASE**
22
                        Plaintiffs,
23        vs.

24
   FUND FOR PUBLIC INTEREST RESEARCH,
25 INC.,

26
                        Defendant.
27

28

   EMPLOY\369135.1

This Stipulation of Settlement and Release (the "Agreement") is entered into effective as of August ___, 2008 by and between The Fund for Public Interest, Inc. ("Fund") and Rich Prentice, Christian Miller and Tiffiney Petherbridge and the class they purport to represent (hereinafter collectively "Plaintiffs").

## Recitals

A.     A dispute arose between Plaintiffs and Fund about allegedly unpaid overtime and other compensation. On December 19, 2006, Rich Prentice, Christian Miller and Tiffiney Petherbridge ("Plaintiffs") filed a collective action and class action lawsuit against Fund entitled *Rich Prentice, et al v. The Fund for Public Interest Research, Inc.*, Case No. C 06-7776 SC in the United States District Court for the Northern District of California ("the Action").

B.     Plaintiffs in the Action alleged that Fund violated the federal Fair Labor Standards Act ("FLSA"), the California Labor Code, the California Business and Professions Code, and New York's Minimum Wage Act in that it allegedly (a) misclassified certain present and former employees (whose job titles were either "Canvasser" or "Field Manager" as defined below) as exempt when they should have been non-exempt and therefore entitled to hourly pay, overtime, and (as to California employees) meal and rest breaks; and (b) as a consequence of the above, Fund failed to pay the Canvassers and Field Managers for all hours worked, failed to pay overtime when due, and failed to pay California Canvassers and Field Managers for meal and rest breaks and other remedies specified by California law and regulations. In the Action, Plaintiffs alleged collective action and class action claims for relief on behalf of present and former Canvassers and Field Managers nationwide for (1) FLSA Overtime and Minimum Wage Violations; and, as to present and former California Canvassers and Field Managers, (2) Violations of California Overtime and Minimum Wage Provisions; (3) California Waiting Period Penalties; (4) Violations of California Record-Keeping Provisions; (5) Violations of California Meal and Rest Period Provisions; (6) Violations of the California Unfair Competition Law; (7) Conversion; and, as to present and former New York Canvassers and Field Managers, (8) Violations of New York Overtime Provisions, and (9) Violations of New York "Spread of

1
2
3

Hour" Provisions. The *Fund denied, and continues to deny, each and every material allegation made by Plaintiffs*

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

C.        On May 28, 2007, Plaintiffs filed a motion with the Court seeking to conditionally certify the action as a FLSA collective action, and to allow *Hoffmann-LaRoche* notice to be sent to potential collective action participants. Defendant filed a motion of non-opposition to conditional FLSA collective action certification, and on September 18, 2007, the Court conditionally certified Plaintiffs' claims for violations of the FLSA as an FLSA collective action, pursuant to 29 U.S.C. 216(b). In addition, the Court ordered that notice of the pendency of the FLSA collective action, along with a "Consent to Join" form, be mailed to all current and former Fund employees who held a covered position at any time in the three years prior to the date of the notice mailing. Notice of this Action was sent to thousands of present and former Fund Canvassers and Field Managers. Approximately 770 present and former Fund Canvassers and Field Managers filed Consents to Join this Action. Approximately 550 of those who filed consents to join worked for Fund prior to May 7, 2007 (the date upon which Fund voluntarily began paying them for overtime and observation days). The Consents to Join appointed Plaintiffs' counsel (defined below) as counsel for the joining persons and designated Plaintiffs Rich Prentice, Christian Miller and Tiffiney Petherbridge to make decisions on behalf of all joining persons regarding the Action.

20
21
22
23
24
25
26
27
28

D.        Plaintiffs Rich Prentice, Christian Miller and Tiffiney Petherbridge, on behalf of themselves and the Class they purport to represent, and Fund desire to fully and finally settle and completely resolve all rights, claims, causes of action, and proceedings and avoid claims or further litigation by Plaintiffs and the class members against Fund and its past, present and future officers, directors, and employees, and the predecessors, heirs, successors, executors, trustees, administrators and assigns of each of the foregoing, as to all claims which were pleaded or which could have been pleaded in the Action arising out of the facts alleged in the Complaint, including claims based on the FLSA, California law or regulations, and/or New York law or regulations, which claims arose on or before May 7, 2007, including, without

limitation, any alleged misclassification of employees, non-payment of overtime and/or minimum wage and/or any other wage or compensation due for employment, failure to maintain records or give wage statements or give meal or rest breaks, or make payments therefor, or make any other payment due under the FLSA, California law or regulations, and/or New York law or regulations.

E. The Plaintiffs and their counsel have fully analyzed and evaluated the putative plaintiff class's respective claims and contentions, Fund's defenses, and this settlement as it affects the named plaintiffs and the members of the alleged plaintiff class. Further, the Parties mediated this case on June 24, 2008, before the Hon. Edward Infante (Ret.). Plaintiffs and their counsel, after taking into account the foregoing, along with the substantial risks of litigation, are satisfied that the terms of this Agreement are a fair, reasonable, adequate, equitable and complete settlement and resolution of all claims that were pleaded or which could have been pleaded in the Action arising out of the facts alleged in the Complaint; that Plaintiffs do not seek any injunctive or other relief beyond the Settlement Payment described below; and that a settlement of the Action on the terms set forth below is in the best interest of the alleged class (as defined in Paragraph 1, below).

F. Fund, while continuing to deny any and all allegations of wrongdoing and disclaiming any and all liability with respect to any and all claims made against it in the Action, and contending that its employee classification and pay practices were and are lawful and proper, considers it desirable to resolve the Action on the terms stated herein, in order to avoid further expense, inconvenience, and interference with its ongoing non-profit operations, and to dispose of burdensome litigation, and thus in its best interest.

G. This Agreement reflects a compromise between the Parties and shall in no event be construed as or be deemed an admission or concession by any party of the truth or the validity of any substantive or procedural allegation, claim, or defense asserted in the Action, or in any other action or proceeding, or of any fault, negligence, or breach of any alleged duty on the part of any party, and all such allegations are expressly denied. This Agreement is made

without admission of or waiver of any substantive or procedural fact, claim, or defense by any party, and shall not be used in evidence in any judicial or administrative proceeding, except to enforce the terms hereof.

H.     This Agreement is subject to and its effectiveness conditioned upon legally final approval by the Court and the other conditions precedent specified in Paragraph 5, below.

**NOW, THEREFORE**, with no admission of any substantive or procedural fact, claim, or liability by Fund, as a negotiated compromise, and in consideration of and in reliance upon the definitions, recitals, promises, covenants, understandings and obligations set forth in this Agreement, Plaintiffs and Fund hereby agree as follows:

## Definitions

The following terms shall have the following meanings:

"Plaintiffs" means Rich Prentice, Christian Miller and Tiffiney Petherbridge and the other approximately 550 persons who worked within the relevant time period and who filed consents to join the Action (who are defined as Sub-class A, below), and the California and New York residents who are mailed notice of the Action and who do not opt out of the Action (who are defined as sub-classes B and C, below).

"The Settlement Administrator" is that person or entity selected by Plaintiffs' Counsel and approved by the Court to serve as the administrator for the settlement of the Action, who shall serve as the joint agent of Plaintiffs and Fund.

"Plaintiffs' Counsel," for purposes of notice or service in the Action only, means David A. Lowe and John T. Mullan of Rudy, Exelrod & Zieff, LLP, 351 California Street, Suite 700, San Francisco, CA 94104. For purposes of the substantive obligations of Plaintiffs and their counsel, "Plaintiffs' Counsel" shall mean and include any and all attorneys associated with Rudy, Exelrod & Zieff, LLP.

"Fund's Counsel" or "Fund through its counsel," for purposes of notice or service in the Action, means Walter V. Siebert of Sherman & Howard LLC, 633 Seventeenth St., Suite 3000, Denver, CO 80202.

"Class" and "Class Members" means all current and former employees of Fund who held the position of Canvasser or Field Manager during the relevant time period and who filed Consents to Join the Action (defined as sub-class A, below), as well as individuals who held the position of Canvasser or Field Manager in California and/or New York during the relevant time periods who are mailed notice of the Action and who do not opt out of the Action (who are defined as sub-classes B and C, below).

"Parties" refers jointly to Plaintiffs and Fund.

The term "Final Approval Order" shall mean the order of the District Court that gives final approval to this Agreement.

The term "Final Approval Date" shall mean the occurrence of all of the conditions set forth in Paragraph 5 of this Agreement.

The term "Effective Date" shall mean the date specified in Paragraph 6 of this Agreement.

## Overtime Compensation Settlement

1.  *Class Certification.* For purposes of settlement only, and without any admission by any party in this or any other matter, the Parties stipulate to class action certification of sub-classes B and C in the Action pursuant to Rule 23, Fed. R. Civ. P. Sub-class A, Sub-class B, and Sub-class C are defined below and shall be collectively referred to as the "Class". The three sub-classes are defined as follows:

a.  Sub-class A shall be the FLSA Collective Action class members who filed Consents to Join the Litigation and who worked for Fund as a Canvasser or Field Manager in any state other than California or New York during the FLSA Class Period (*i.e.*, three years back from the date of each person's consent to join the Litigation through May 7, 2007); and

b.  Sub-class B shall be the "California Class" comprised of anyone identified in Fund's payroll records as having worked for Fund in California as a Canvasser or Field Manager during the California Class Period (*i.e.*, the payroll

STIPULATION OF SETTLEMENT AND RELEASE          -6-
EMPLOY\369135.1

period including December 16, 2002 through May 7, 2007), who are sent notice of the Action and who do not opt-out.

c.    Sub-class C shall be the "New York Class" comprised of anyone identified in Fund's payroll records as having worked for Fund in New York as a Canvasser or Field Manager during the New York Class Period (*i.e.*, the payroll period including December 16, 2000 through May 7, 2007), who are sent notice of the ' Action and who do not opt-out.

The above stipulation is for settlement purposes only, with no admission that the alleged California and New York sub-classes would be appropriate for class action certification, nor for discovery or trial of the Action. If not all of the conditions set forth in Paragraphs 5 and 6 are met, then the stipulation to settlement and class certification contained herein shall be null and void, and of no force and effect; said stipulation shall not be referred to by any of the Parties or considered by any court in briefing or in evidence; the Parties shall each retain all of their rights, remedies, claims, defenses, and contentions for and against collective action and class certification and on the merits of the Action; and the Action shall continue with each party preserving all of his, her, or its claims and/or defenses. If the settlement is nullified for any reason, including failure to meet the conditions set forth in Paragraphs 5 and 6, Plaintiffs and the FLSA Collective Action Class Members will continue to prosecute the FLSA collective action, and nothing in this Agreement affects the validity of the District Court's prior order granting conditional certification of the FLSA collective action. In this event, Fund shall likewise retain the right to move to de-certify the FLSA collective action.

2.    *Settlement Payment.* In full settlement of Plaintiffs' claims for the Class, including the FLSA Collective Action Class, California Class, and New York Class and without admitting any liability, and not later than twenty (20) days following the Effective Date (as defined in Paragraph 6 below), Fund shall pay an "all-in," non-reversionary Settlement Payment of Two Million One Hundred and Fifty Thousand Dollars ($2,150,000.00) as payment of all sums due under the settlement (the "Settlement Payment") without exception in the manner

described below. The Settlement Payment is a common fund, from which will be made all settlement payments to (a) the members of the FLSA Collective Action Class, and (b) the California and New York Class members who do not opt-out of the settlement; all settlement administration costs, including any and all costs related to class notice, notice of settlement, calculation of settlement payments, and any other costs of administration ("Settlement Administration Costs"); any service payment to the named Plaintiffs awarded by the Court; all attorneys' fees and litigation costs and expenses that are awarded by the Court, and any and all other costs, fees, and expenses related to the settlement. In addition to the Settlement Payment, Fund shall pay the employers' share of FICA and FUTA taxes, as well as other applicable employer tax contributions associated with specific wage payments to Class Members. Apart from the Settlement Payment and the employer's share of FICA and FUTA taxes and other applicable employer tax contributions and/or payments to taxing entities associated with wage payments to Class Members, Fund shall not be liable for and shall make no additional payment to or on behalf of the Class, or to Plaintiffs' Counsel. Fund shall not be liable for satisfaction of any liens or for any pre or post judgment interest, liquidated damages, or penalties in addition to the Settlement Payment. There will be no reversion to Fund of any portion of the Settlement Payment after the Effective Date of the settlement as defined in Paragraph 6, below. The procedure for calculating and making the Settlement Payment shall be:

- Within ten (10) days after the end of the opt-out period, Fund shall supply to the Settlement Administrator the data for (a) the members of the FLSA Collective Action Class, and (b) the California and New York Class members who do not opt-out of the settlement, as necessary to make calculations of payments to Class members in accordance with Paragraph 4, below. Specifically, Fund shall provide a listing of the FLSA Collective Action members and their dates of employment and a listing of California and New York Class members with dates of employment in those states based on its records.

1

2   • Within ten (10) days of entry of the Final Approval Order, the Settlement Administrator

3      shall determine the estimated Settlement Administration Costs pursuant to Paragraph 12,

4      the attorneys' fees, and litigation costs and expenses awarded by the Court pursuant to

5      Paragraph 11, and the service awards to the named Plaintiffs, if any, ordered by the

6      Court pursuant to Paragraph 13, and with such data shall calculate the Net Settlement

7      Fund pursuant to and as defined in Paragraph 4, and shall report said Net Settlement

8      Fund calculation to the Parties.

9   • Within fifteen (15) days of entry of the Final Approval Order, the Settlement

10      Administrator shall make calculations of payments to Class members, including

11      withholding for the employee's share of payroll taxes, subject to approval of the Fund as

12      to the amounts; shall adjust said payments to equal the Net Settlement Fund in

13      accordance with Paragraph 4; and shall finalize and report said calculations to the

14      Parties in a Consolidated Report that states the final Settlement Administration Costs,

15      attorneys' fees, costs and expenses, and class representatives' service awards, all as

16      ordered by the Court, describes the method of calculation of the Net Settlement Fund,

17      required tax withholdings of the employee share of withholdings, and the amounts to be

18      distributed to each Class member. Copies of the calculations shall be provided to

19      Counsel for Plaintiffs and Counsel for the Fund.

20   • Within ten (10) calendar days of the Effective Final Date, Fund will pay the total

21      $2,150,000 Settlement Payment, into an account held by the Settlement Administrator.

22   • Upon receipt of the Settlement Payment in immediately available funds as described in

23      the prior subparagraphs, the Settlement Administrator shall distribute the Settlement

24      Administration Costs, the Plaintiffs' counsel's attorneys' fees, costs and expenses, the

25      Class Representatives' service awards, and the distributions to Class members from the

26      Net Settlement Fund, all as authorized by the Court and pursuant to the terms of this

27      Stipulation of Settlement. Checks paid by the Settlement Administrator shall require the

28      payee to cash said checks within ninety (90) days of the date of the check.

STIPULATION OF SETTLEMENT AND RELEASE          -9-
EMPLOY\369135.1

1

2    • Within one hundred twenty (120) days following the Effective Date, the Settlement

3       Administrator shall provide to the Parties and file with the Court a final accounting and

       certificate of completion of the administration of the settlement.
4
     • In the event that the absence of a signed order by the Court on a point that requires an
5
       order of the Court delays performance of any of the above settlement administration or
6
       payment obligations by the date specified in the above schedule, then (a) upon receipt of
7
       such Court order(s), such obligation shall be performed within the same number of days
8
       following the receipt of such Court order(s) as the time interval that existed in the
9
       original schedule between the immediately preceding settlement administration or
10
       payment obligation and the next settlement administration or payment obligation to be
11
       performed, and (b) the dates for the ensuing steps of settlement administration or
12
       payment obligations in the above schedule shall be adjusted accordingly based upon the
13
       new date for performing the next step of settlement administration or payment
14
       obligation, maintaining the same intervals between steps as in the original schedule.
15
       3.     *Taxes.*  As noted above, in addition to the Settlement Payment, Fund shall also
16
pay the employer's share of payroll taxes arising out of and in connection with all payments to
17
Settlement Class Members that are for wages.  That is, Fund shall pay the employer's share of
18
Social Security, FUTA, Medicare, SDI, EDD and state unemployment taxes as applicable.
19
These payroll tax obligations to be paid by Fund are in addition to and are over and above the
20
amount of the Settlement Payment.  Seventy-five percent of the Settlement Payment allocable
21
as Class member distributions shall be treated as wages for the purposes of taxes and
22
withholding, and twenty-five percent allocable as Class member distributions shall be deemed
23
to be interest and shall not be treated as wages for purposes of taxes or withholding
24
       4.     *Allocation and Distribution of Net Settlement Fund.*  Plaintiffs' counsel will seek
25
Court approval for a plan of allocation to distribute the Net Settlement Fund (the Settlement
26
Payment, less Settlement Administration Costs, attorneys' fees, litigation costs and expenses,
27
and service payments to the named Plaintiffs, if any, awarded by the Court) to the FLSA
28
STIPULATION OF SETTLEMENT AND RELEASE          -10-
EMPLOY\369135.1

Collective Action Class members and the California and New York Class members who do not opt-out on a pro rata basis and pursuant to a formula that takes into account days worked during the applicable class period according to the information reasonably ascertainable from Fund's payroll records and whether the class member worked in California or New York. If a Class member's dates of employment are not reasonably ascertainable from Fund's payroll records, that person will be credited with a number of weeks worked based on an average of weeks worked during the applicable period by Class members for whom data was available. For purposes of calculating the settlement amounts due to individual Class members, the following principles shall apply:

A.    The distribution formula shall assign ten points to those members of the three sub-classes who were employed as a Canvasser or Field Manager for less than five days during the applicable class period. Class members who were employed for five days or longer will receive 10 points, plus an additional five points for each workweek that the class member was employed as a Canvasser or Field Manager during the applicable class period up through May 7, 2007. In addition, the distribution formula shall assign a factor of one and one-half (1.5) to New York sub-class members for weeks worked as a Canvasser or Field Manager in New York during the applicable class period up through May 7, 2007, and a factor of three (3) to members of the California sub-class for weeks worked as a Canvasser or Field Manager in California during the applicable class period up through May 7, 2007. The state class multiplication factors recognize that the California and New York state law claims released by those class members provide for broader remedies than does the FLSA. Each Class Member's points will be multiplied by the appropriate multiplication factor, if any, to arrive at their assigned Points Total.

B.    Based on the above principles, each class member's proportional share of the whole set of individual amounts calculated shall be determined. That is, each

STIPULATION OF SETTLEMENT AND RELEASE          -11-
EMPLOY\369135 1

Class Member's assigned Points Total will be divided by the sum of all Class Members' Points Total to arrive at each class member's proportional share of the Net Settlement Fund. If the total of the above amounts exceeds the available Net Settlement Fund, then individual settlement amounts shall be proportionally adjusted downward until the amount to be distributed equals the Net Settlement Fund. If the total of the above amounts is less than the available Net Settlement Fund, then individual settlement amounts shall be proportionally adjusted upward until the amount to be distributed equals the Net Settlement Fund.

C. Any amount remaining in the Settlement Fund after distribution to the members of the Class as set forth above based upon the agreed upon formula (for example due to settlement checks returned undeliverable or the failure of Class members to negotiate settlement checks), will be paid by or on behalf of Fund as a *cy pres* charitable contribution to The Legal Aid Society of San Francisco—Employment Law Center.

D. No modifications can be made to the plan of allocation unless jointly agreed upon by the Parties and approved by the Court

5. *Conditions Precedent and Final Approval Date.* The settlement of the Action and the Settlement Payment are conditioned upon:

A. The entry of a Final Approval Order by the Court that gives final Court approval of this Agreement, including, without limitation, the dismissal with prejudice of any claims by members of the Class as to all claims which were pleaded or which could have been pleaded in the Action arising out of the facts alleged in the Complaint, including claims based on the FLSA, California law or regulations, and/or New York laws or regulations, which claims arose on or before May 7, 2007, including, without limitation, any alleged misclassification of employees, non-payment of overtime and/or minimum wage and/or any other wage or compensation due for employment, failure to maintain records or give wage statements or give meal or rest breaks, or make payments therefor, or make any other payment due under the FLSA, California law or regulations, and/or New York laws or regulations; and

B. The legal finality of the Final Approval Order of this Agreement by virtue of entry of the Final Approval Order and no objections, or upon entry of the Final Approval Order and its affirmance on appeal.

6. *Effective Date.* The Effective Date of the settlement will be the later of the following dates: (a) the date of an order by the Court granting final approval to the settlement, if there are no objections; or (b) if there are objections and an appeal of the Court's decision granting final approval, the day after all appeals are finally resolved in favor of final approval. Upon the Effective Date, the Plaintiffs' Complaint in the Action shall be dismissed with prejudice, without costs, and with all appeals waived, and the release set forth in Paragraph 7, below, shall be effective.

7. *Release.* In consideration of the Settlement Payment made by Fund and the Agreement made herein, and upon the Effective Date, all members of the FLSA Collective Action Class, and all members of the California and New York sub-classes who do not timely opt out of the settlement, and each of their respective agents, attorneys, employees, successors, heirs, spouses, administrators, executors, partners, assigns, and each of their past, present and future representatives (the "Releasors") hereby release and forever discharge Fund, and its past, present and future officers, directors, and employees, and the predecessors, heirs, successors, executors, trustees, administrators and assigns of each of the foregoing (the "Releasees"), of and from all claims, known or unknown, suspected or unsuspected, which were pleaded or which could have been pleaded in the Action arising out of the facts alleged in the Complaint, including, without limitation, any alleged misclassification of employees, and/or non-payment of overtime and/or minimum wage and/or any other wage or compensation due for employment, and/or failure to maintain records or give wage statements or give meal or rest breaks, or make payments therefor, or make any other payment due under the FLSA and/or California and/or New York wage and hour laws or regulations, which claims arose on or before May 7, 2007 ("Released Claims").

8. *Unknown Claims Encompassed Within Release.* With regard to the claims encompassed within Paragraph 7, above, the Releasors acknowledge that they are aware that

they may later discover facts in addition to or different from those which they now know or believe to be true with regard to the subject of this Agreement, but that, upon the Effective Date, they intend fully, finally, and forever to settle and release all disputes and differences, known and unknown, suspected or unsuspected, which arose on or before May 7, 2007, which now exist or formerly existed between the Parties and/or any of the Releasees with respect to the Released Claims listed in Paragraph 7. In furtherance of this intention, this release shall be and will remain a full and general release of the subject matter of the Released Claims which arose on or before May 7, 2007, notwithstanding the discovery or existence of any additional or different facts relating to the Released Claims or the subject of this Agreement. The Releasors also expressly waive all rights or benefits to which they may be entitled under the terms of Section 1542 of the California Civil Code or of any other state or federal law of similar effect. California Civil Code § 1542 provides that:

> *A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.*

9.     *Class Notice, Opt-out and Objections to the Settlement.*  Within thirty (30) days of the execution of this Agreement, Defendant will provide the Settlement Administrator with a list, in electronic form, of the names, last known addresses, and Social Security numbers, of all putative California and New York Class members, together with their dates employed as a Canvasser or Field Manager in California or New York during the applicable class period based on its records. Within ten (10) days of Preliminary Approval of this Settlement, the Claims Administrator shall mail notice of this Settlement to all those who filed consents to join the FLSA collective action and all putative California and New York Class members by first class mail in the form approved by the Court ("Class Notice"). The mailing of the Class Notice will commence the 40-day opt-out period, and any opt-outs must be post-marked or received by the Settlement Administrator no later than 40 days after the Class Notice is mailed. The Class Notice will contain a description of the case and the allocation procedures and shall state that

Fund disputes all liability in the Action. The Class Notice will inform Class members that: (a) there are potential tax consequences to each Class member associated with the settlement, including receipt of a lump sum payment, the payments to Plaintiffs' attorneys and/or the named Plaintiffs by Fund, and other issues; (b) Plaintiffs' attorneys do not represent any Class member as to the tax ramifications of the settlement and have not given any advice with respect thereto; and (c) each Class member is advised to consult with his or her own tax advisor concerning the tax consequences of the settlement to him or her. The Class Notice will state that both Parties support the settlement and encourage participation in the settlement, and that Fund will not retaliate against any Class member for participating in the settlement. Neither named Plaintiffs nor Fund nor their or its counsel will encourage any Class member to opt-out of the settlement. The Class Notice will also inform recipients that this litigation is limited to claims which arose on or before May 7, 2007, and that those people who only worked after May 7, 2007 are excluded from the Class. The Class Notice shall be provided to the Class by:

> A. A single Class Notice mailing to each Class member at his/her last known address by United States Postal Service ("USPS") first class mail with notice of the terms of this Agreement and its legal effect, the date and time and place of the Final Approval And Fairness Hearing, the Class member's right to object and appear at the hearing individually or through counsel, and the procedure for opting-out or filing any objections to this Agreement.

> B. As to any Class Notice that is Returned Undeliverable Mail ("RUM"), within 3 days of receipt of such RUM notice, the Settlement Administrator shall update that Class member's address by using the USPS National Change of Address List and, if necessary, perform a routine skip trace procedure for a commercially reasonable fee, and shall re-mail the Class Notice only once by USPS first class mail to such person. No further address checking or re-mailing shall be required or performed.

Any Settlement Class Member wishing to object to the Court's approval of this Settlement shall be required to follow the procedures set forth in the Class Notice, including filing and serving any objections on Plaintiffs' and the Fund's Counsel no later than forty (40) days from the original mailing of Class Notice. A Class Member who has submitted an opt-out request may not submit any objections to the Settlement. Any Settlement Class Member who

1  fails to file a timely written objection shall be foreclosed from objecting to this Settlement,

2  unless otherwise ordered by the Court. Counsel for the Settling Parties shall file any response to

3  any objections filed by objecting Settlement Class Members as part of or contemporaneous with

4  Plaintiffs' application for final settlement approval. Class Counsel may communicate with

5  Settlement Class Members regarding their objections and may advise the Court of any

6  Settlement Class Members who have communicated that they wish to withdraw their

7  objections.

8      10.    *Settlement Administrator.* Subject to the approval of the Court, the Parties have

9  selected (a) Garden City Group as the Settlement Administrator to perform functions such as

10 mailing class notice, collecting opt-out notices and/or objections, if any, and mailing out

11 settlement payments to Class members, and (b) performing the settlement calculations set forth

12 in paragraph 4, above. Garden City Group shall be compensated as part of the Settlement

13 Administration Costs and shall be paid from, and not in addition to, the Settlement Payment in

14 accordance with the procedure set forth in Paragraph 2.

15     11.    *Plaintiffs' Attorneys' Fees, Costs, and Expenses.* At the Final Fairness and

16 Approval Hearing, Plaintiffs' counsel will apply to the Court for an amount not to exceed 25%

17 of the Settlement Payment as an award of attorneys' fees, to be paid from the Settlement

18 Payment, for good cause shown according to applicable law. Plaintiffs' counsel will also ask

19 the Court to order reimbursement of their reasonable out-of-pocket litigation costs and

20 expenses, to be paid from the Settlement Payment. Fund will not oppose a fee and cost and

21 expense application by Plaintiffs' counsel as set forth above. Any fees and/or costs or expenses

22 awarded by the Court will be paid from, and not in addition to, the Settlement Payment in

23 accordance with the procedure set forth in Paragraph 2. Plaintiffs' counsel will be issued an

24 IRS Form 1099 for these amounts.

25     12.    *Settlement Administration Costs.* The Settlement Administrator shall maintain

26 records for the Settlement Administration Costs associated with the Action. The actual and

27 reasonable Settlement Administration Costs payable to the Settlement Administrator shall be

28

STIPULATION OF SETTLEMENT AND RELEASE          -16-
EMPLOY\369135.1

1
2
3
4

payable from the Settlement Payment, and not in addition thereto, in amounts to be determined by the Court, for good cause shown according to applicable law, and shall be paid in accordance with the procedure set forth in Paragraph 2.

5
6
7
8
9
10
11
12
13
14
15

13. *Class Representative Service Award.* At the Final Fairness and Approval Hearing, Plaintiffs Rich Prentice, Christian Miller and Tiffiney Petherbridge will apply to the Court to receive Ten Thousand Dollars ($10,000.00) each from the Settlement Payment for services rendered to the Class, subject to the approval of the Court for good cause shown according to applicable law. Fund will not oppose Plaintiffs Rich Prentice, Christian Miller and Tiffiney Petherbridge's request for a service award payment as stated above. If the service award is approved by the Court, the service award will be paid from the Settlement Payment and an IRS Form 1099 will be issued to the named Plaintiffs for that amount. The recipients shall assume full responsibility and liability for the payment of taxes due on such awards. Any service award ordered by the Court will be paid from, and not in addition to, the Settlement Payment in accordance with the procedure set forth in Paragraph 2.

16
17
18
19

14. *Press Release.* Plaintiffs' counsel, Plaintiffs Prentice, Miller and Petherbridge, and Fund agree not to issue any press release regarding the facts alleged in the Action or the settlement of the Action or to disclose any information about the settlement prior to the filing of the application for preliminary court approval of the settlement.

20
21
22
23
24
25

15. *No Admission of Liability.* Any and all agreements, notices, statements, and press releases shall explicitly state that there has been no admission by Fund of any liability of any kind, and nothing in such agreements, notices, statements, or press releases shall be used, referred to, or relied upon as constituting an admission of any kind or shall be used, relied upon, or referred to in any forum for any purpose, except insofar as may be necessary to enforce the settlement.

26
27

16. *Preliminary Approval By Court.* The Parties shall petition the United States District Court for the Northern District of California for preliminary approval of this Agreement

28

STIPULATION OF SETTLEMENT AND RELEASE          -17-
EMPLOY369135 1

and for notice to be sent to Class members as specified herein. The Parties will submit this Agreement and a [proposed] Preliminary Approval Order.

17. *Final Fairness And Approval Hearing.* The Parties shall petition the Court to hold a Final Fairness and Approval Hearing and thereafter enter a [proposed] Final Approval Order. At the Final Fairness and Approval Hearing, the Court will review any objections to the settlement with the Parties and any Class member who chooses to appear. The Parties have the right to present arguments and evidence regarding such objections, if any. To be heard at the hearing, a Class member must file and serve any objections on Plaintiffs' counsel and Fund's counsel so that they are received by each no later than 40 days from the original mailing of Class Notice. Any objections received outside this time period will not be considered by the Court.

18. *Mediation.* Without prejudice to the Court's continuing jurisdiction to supervise and enforce this settlement, in the event of any disagreements between the Parties concerning the terms of this Agreement or ancillary documents related to this Agreement, the Parties shall consult with the Hon. Edward Infante (Ret.), for mediation in resolving any differences of opinion and finalizing such documents as soon as practicable. Such prompt and cooperative consultation by the Parties with Judge Infante shall be a condition precedent to an application by a party to the Court for relief on the subject under discussion, provided that, if the Parties and Judge Infante are not able to consult with each other within two weeks of a request by a party for assistance in resolving a dispute, then the requesting party may apply to the Court for relief.

## General Terms Regarding Construction of Agreement, Etc.

19. *No Representations.* This Agreement controls over prior communications regarding the matters contained herein between the signatories hereto or their representatives. Except as expressly stated in this Agreement, no party hereto has made any statement or representation to any other party regarding any fact relied upon by any other party in entering

STIPULATION OF SETTLEMENT AND RELEASE  -18-
MPLOY\369135 1

1  into this Agreement, and each party specifically does not rely upon any statement,

2  representation or promise of any other party in executing this Agreement.

3      22.    *Consent* This Agreement has been carefully read by all Parties and the contents

4  hereof are known and understood by all Parties. The Parties have each received independent

5  legal advice from attorneys of their choice with respect to the preparation, review, and

6  advisability of executing this Agreement. Prior to the execution of this Agreement by each

7  party, each party's attorney has reviewed the Agreement and each party acknowledges that such

8  party has executed the Agreement after independent investigation and without fraud, duress or

9  undue influence.

10      23.    *Successors.* Subject to the provisions otherwise contained in this Agreement,

11  this Agreement shall inure to the benefit of and be binding upon the heirs, successors, and

12  assigns of the respective Parties to this Agreement.

13      24.    *No Assignments.* Each party represents and warrants that he, she or it has not

14  heretofore assigned or transferred, or purported to assign or transfer, to any person or entity, his,

15  her or its rights in the Action or any interest therein, or any other interest in any claims or

16  claims arising out of any of the matters which are the subject of the Recitals herein.

17      25.    *Negotiated Agreement.* This Agreement and each of its terms constitutes a

18  negotiated contract and not merely a recital and are the result of negotiation among the Parties.

19  In interpreting this Agreement, there shall not be a presumption of interpretation against any

20  party, and each party expressly waives the doctrine of *contra proferentum.*

21      26.    *Compromise Agreement And No Admissions.* This Agreement is the result of a

22  compromise among the Parties, and nothing in this Agreement shall constitute an admission of

23  liability by any party with regard to the subject matter of the Action and of this Agreement; or

24  with respect to the composition or certification of a class or collective action under the Federal

25  Rules of Civil Procedure, the Fair Labor Standards Act, or any other applicable law.

26

27

28

27. *Warranty of Authority.* Each of the signatories hereto warrants and represents that he or she is competent and authorized to enter into this Agreement on behalf of the party for whom he or she purports to sign it.

28. *Evidentiary Privilege.* This Agreement shall be deemed to fall within the protection afforded compromises and offers to compromise by Rule 408, Federal Rules of Evidence, and Section 1152, California Evidence Code.

29. *Confidentiality.* The Parties agree that pending Court approval and up until this document becomes public by filing the application for preliminary approval of the settlement, it shall remain confidential and shall not be disclosed to the public by counsel or by any party to this Agreement. The Parties further agree that any information, negotiations, data, drafts and/or summaries exchanged between the Parties relating to the negotiation of this Agreement shall remain confidential and shall not be disclosed to the public for any purpose at any time.

30. *Applicable Law* This Agreement shall be governed by, interpreted under, and construed and enforced in accordance with the domestic laws of the State of California, without regard to conflicts of laws principles.

31. *Further Actions.* The Parties agree to do such further acts and things and to execute and deliver such additional agreements and instruments as the other may reasonably require to consummate, evidence or confirm the agreements contained herein in the manner contemplated hereby. Fund and Plaintiffs mutually agree to cooperate to ensure the expeditious approval and administration of this settlement.

32. *Continuing Court Jurisdiction.* The Court shall have continuing jurisdiction to supervise and enforce the settlement set forth in this Agreement.

33. *No Third Party Beneficiaries.* The Parties do not intend to confer any benefit hereunder on any person, firm, or corporation other than those specifically named herein.

34. *Modifications.* As approved by the Court, this Agreement may not be modified in whole or in part except by an agreement in writing signed by all Parties, and executed in the same manner as this Agreement.

35.  *Execution* This document may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument

36.  *Entire Agreement* This Agreement and the exhibits hereto embody the entire agreement and understanding of the Parties hereto with respect to the subject matter contained herein, and is a fully integrated contract.

IN WITNESS WHEREOF, the Parties hereby execute this Agreement effective as of the date set forth above.

_____ Dated: 12-5-2008
Rich Prentice,
on behalf of himself and others similarly situated

_____ Dated:_____
Christian Miller,
on behalf of himself and others similarly situated

_____ Dated:_____
Tiffiney Petherbridge,
on behalf of herself and others similarly situated

The Fund for Public Interest Research, Inc

_____ Dated:_____
By: Faye Park, President

**Approved as to Form:**

Dated: Nov. 17, 2008

SHERMAN & HOWARD, LLC

By: _____
Walter V. Siebert
Attorneys for Defendant
THE FUND FOR PUBLIC INTEREST
RESEARCH, INC.

STIPULATION OF SETTLEMENT AND RELEASE        -21-
MPLOY\369135 1



35. *Execution.* This document may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

36. *Entire Agreement.* This Agreement and the exhibits hereto embody the entire agreement and understanding of the Parties hereto with respect to the subject matter contained herein, and is a fully integrated contract.

IN WITNESS WHEREOF, the Parties hereby execute this Agreement effective as of the date set forth above.

_____     Dated: _____
Rich Prentice,
on behalf of himself and others similarly situated

_____     Dated: 11-24-08
Christian Miller,
on behalf of himself and others similarly situated

_____     Dated: _____
Tiffiney Petherbridge,
on behalf of herself and others similarly situated

The Fund for Public Interest Research, Inc.

_____     Dated: _____
By: Faye Park, President

Approved as to Form:

Dated: *Nov. 17, 2008*

SHERMAN & HOWARD, LLC

By: _____
Walter V. Siebert
Attorneys for Defendant
THE FUND FOR PUBLIC INTEREST
RESEARCH, INC.

35. *Execution* This document may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

36. *Entire Agreement* This Agreement and the exhibits hereto embody the entire agreement and understanding of the Parties hereto with respect to the subject matter contained herein, and is a fully integrated contract.

IN WITNESS WHEREOF, the Parties hereby execute this Agreement effective as of the date set forth above

_____    Dated:_____
Rich Prentice,
on behalf of himself and others similarly situated

_____    Dated:_____
Christian Miller,
on behalf of himself and others similarly situated

_____    Dated: 11/21/08
Tiffney Petherbridge,
on behalf of herself and others similarly situated

The Fund for Public Interest Research, Inc

_____    Dated:_____
By: Faye Park, President

Approved as to Form:

Dated: Nov. 17, 2008

SHERMAN & HOWARD, LLC

By: _____
Walter V Siebert
Attorneys for Defendant
THE FUND FOR PUBLIC INTEREST
RESEARCH, INC.

STIPULATION OF SETTLEMENT AND RELEASE        -21-
EMPLOY369135 1

1

2

3    Dated: _12/5/08_                                RUDY, EXELROD & ZIEFF, LLP

4

5                                                    By: _____

6                                                        David A. Lowe
                                                         John T. Mullan
7                                                        Attorneys for Plaintiff
                                                         RICHARD PRENTICE,
8                                                        CHRISTIAN MILLER, and
                                                         TIFFINEY PETHERBRIDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION OF SETTLEMENT AND RELEASE          -22-
EMPLOY\369135.1